Filed 1/24/24  P. v. Mikkelson CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> SARAH MIKKELSON, <br><br> Defendant and Appellant. | F084626 <br><br> (Super. Ct. No. CR-21-009121) <br><br><br> **OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Stanislaus County.  Dawna Reeves, Judge.

Nancy Wechsler, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Hill, P. J., Peña, J. and Snauffer, J.

## STATEMENT OF APPEALABILITY

This appeal is from a final judgment of conviction after a jury trial and is authorized by Penal Code section 1237.[1]

## STATEMENT OF THE CASE

A first amended information filed on April 21, 2022, by the Stanislaus County District Attorney charged Mikkelson with unauthorized use of a vehicle (Veh. Code, § 10851, subd. (a); count 1); receiving a stolen vehicle (§ 496d, subd. (a); count 2); and grand theft (§ 487, subd. (a); count 3). As to all three counts, it was alleged that the value of the property exceeded nine hundred and fifty dollars ($950).

On May 2, 2022, a jury found Mikkelson guilty on all counts and the special allegations true.

On May 31, 2022, the trial court suspended the imposition of sentence and placed Mikkelson on probation for two years. She was also ordered to serve 180 days in county jail and to pay a $300 restitution fine (§ 1202.4, subd. (b)); a $300 probation revocation fine, stayed (§ 1202.44); $90 in criminal conviction assessments (Gov. Code, § 70373); and $120 in court operation assessments (§ 1465.8).

On July 11, 2022, Mikkelson filed a timely notice of appeal.

## STATEMENT OF FACTS

*Prosecution's Evidence*

In 2018, Hertz District Manager Shelby Culp processed Mikkelson's temporary replacement car rental. At that time, Culp had worked for Hertz for about seven months and her job was then limited to the rental process. Mikkelson rented a 2019 Toyota Corolla from December 15 to December 24, 2018, at a daily rental rate of $25.75 for a total of $310.02. Because the car was rented to replace Mikkelson's stolen car, Mikkelson's insurer, Geico Insurance Company, paid a portion of the rental fees.

---

[1] Undesignated statutory references are to the Penal Code.

2.

Although the rental car was supposed to be returned on December 24, 2018, it was not returned on that date. Culp did not know whether or not the rental term was extended past January 4, 2019.

Hertz believed the rental was overdue and tried to contact Mikkelson about returning the car. Culp explained that entries on Hertz's Overdue Report indicated Hertz attempted to contact Mikkelson about the overdue rental car 43 times.[2] Culp described five of the 43 entries. Culp also explained that the 43 entries were recorded "as soon as the representatives [made] contact or attempt[ed] contact."

Hertz deemed Mikkelson's car rental to be stolen on January 11, 2019.[3] As of that date, the value of the Toyota was $13,855.34. On February 1, Hertz mailed a certified letter to Mikkelson demanding return of the car.

On February 19, Mikkelson had an outstanding balance of $1,515.07. That same day, the local Hertz office reported to the Modesto Police Department that Mikkelson's rental car had been stolen.

On February 22, CHP Officer Matthew McCain, a member of the Stanislaus County Auto Theft Task Force, noticed a car parked at a Motel 6 with Modesto Toyota dealership paper plates affixed to it. McCain explained that cold plating, i.e., replacing legitimate plates with paper plates, is a common occurrence with stolen cars. McCain opined that Modesto Toyota would not have issued paper plates under the circumstances. Because the car matched the description of a car Hertz had reported stolen, McCain compared the missing car's vehicle identification number (VIN) with the VIN located on the parked car's dashboard. As McCain – who did not identify himself as law enforcement and was not in uniform – inspected the car, Mikkelson approached and

---

[2] Mikkelson contends that 36 of the 43 entries are questionable: 24 entries are ambiguous and 12 entries either do not describe attempts to contact Mikkelson or indicate Hertz used an incorrect phone number or email.

[3] Subsequent references to dates are to dates in 2019 unless otherwise stated.

asked what he was doing. McCain ignored her and got into his unmarked car. But before driving off, McCain stopped his car, rolled down his window, and told Mikkelson that the car had been reported stolen and, if she was caught driving it, she would be arrested.

Then, on February 27, McCain found the same car parked near a restaurant. Mikkelson got out of the car and entered the restaurant with someone. Later, the two returned to the car and Mikkelson drove it away. McCain followed in his unmarked car, conducted a traffic stop, and detained Mikkelson. During a search of the car trunk, police found the rental car's license plates and Mikkelson's personal items which included an unopened certified letter from Hertz. Mikkelson subsequently was arrested.

*Defense Evidence*

Mikkelson testified that on February 22 she first learned there was an outstanding balance beyond what Geico covered.[4] At that point, she testified she paid Hertz the sum of $1,515.07. Mikkelson believed she was in good standing with Hertz and was authorized to possess and drive Hertz's rental car during the time in question.

Officer McCain testified that, after he arrested Mikkelson on February 27, Mikkelson provided him with telephonic "evidence" of her February 22 full payment to Hertz. However, there was no written evidence of payment offered at trial.

Culp conceded that she did not know whether any payments had been made on Mikkelson's account after February 19.

*Evidence Relating to Mikkelson's Rental Term*

Mikkelson did not know her rental term had expired. Both she and Geico had extended the car rental term.[5] Mikkelson believed she was in good standing with Hertz

---

[4] Geico paid Hertz the sum of $868.05.

[5] Mikkelson claimed that the prosecution's evidence showed the return date had been extended at least two times to January 15 and February 20.

4.

and was authorized to possess and drive the rental car during the time in question. Mikkelson would not have kept using the rental car had she known it was reported stolen.

Culp conceded she did not know whether Mikkelson's return date had been extended.

*Evidence Relating to Communications Between Mikkelson and Hertz*

When Mikkelson initially rented the car from Hertz, she disclosed her phone number. Mikkelson explained that she changed her number and replaced her phone after her former husband broke her phone. She provided her new number to Hertz.

Mikkelson also disclosed her email address to Hertz as NURSEMIKK@gmail.com, but the overdue report shows that when Hertz sent emails to Mikkelson they were sent to UNRSEMIKK@gmail.com, an incorrect email address. Mikkelson received some emails from Hertz at her correct email address but none that reported an overdue status.

Mikkelson also disclosed her physical address to Hertz but she later moved. After she moved, she arranged to have her mail forwarded to her new address. She picked up the certified letter from the post office a day or two before her arrest. McCain testified that when police found the certified letter in the rental car's trunk, it was unopened.

*Evidence Related to Paper Plates Used by Appellant*

At some point, Mikkelson noticed that the rental car's license plates were missing. She explained that, because she did not want to drive the car without plates and since the Department of Motor Vehicles was closed, she took the car to the Modesto Toyota dealership to quickly remedy the problem. After informing the dealership about the missing plates, they affixed paper plates onto the car.

Mikkelson testified that her former husband did "really mean things to her." She was "pretty sure" that he was responsible for removing and placing the plates in the trunk; she had no other explanation.

McCain did not contact the Modesto Toyota dealership to verify or disprove Mikkelson's explanation. McCain doubted but did not know whether or not a dealership would provide paper plates under the circumstances presented by Mikkelson. The defense presented no written evidence of the Toyota dealership's alleged actions in this case. McCain conceded that there was no evidence of an attempt to conceal or obfuscate the VIN on the car's dashboard.

## APPELLATE COURT REVIEW

Mikkelson's appointed appellate counsel has filed an opening brief that summarizes the pertinent facts, raises no issues, and requests this court to review the record independently. (*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).) The opening brief also includes the declaration of appellate counsel indicating Mikkelson was advised she could file her own brief with this court. By letter on November 1, 2023, we invited Mikkelson to submit additional briefing. To date, she has not done so.

Having undertaken an examination of the entire record, we find no evidence of ineffective assistance of counsel or any other arguable error that would result in a disposition more favorable to Mikkelson.

## DISPOSITION

The judgment is affirmed.